UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANDACE THOMAS, Plaintiff, v. GENERAL ATOMICS, INC., a California corporation; and DOES 1 through 50, inclusive, Defendants. | Case No.: 3:25-cv-488-WQH-MSB **ORDER** |

HAYES, Judge:

The matter before the Court is the Motion to Dismiss the First Amended Complaint (“Motion to Dismiss FAC”) filed by Defendant General Atomics, Inc. (ECF No. 6.)

## I. PROCEDURAL BACKGROUND

On December 22, 2025, Plaintiff Candace Thomas (“Plaintiff”) initiated this action by filing a Complaint (“Initial Complaint”) in the Superior Court of California for the County of San Diego (Case No. 25CU068062C) against Defendant General Atomics, Inc. (“Defendant”), a California corporation. (ECF No. 1 at ¶1.)

On January 26, 2026, Defendant removed the action to this Court pursuant to 28 U.S.C. §§ 1441 and 1446, asserting federal question jurisdiction. *Id.* at ¶18. On February 2, 2026, Defendant filed a Motion to Dismiss Plaintiff's Complaint. (ECF No. 3.)

On February 23, 2026, Plaintiff filed a First Amended Complaint ("FAC"), the operative pleading. (ECF No. 4.)

On February 27, 2026, the Court denied Defendant's Motion to Dismiss the Initial Complaint as moot. (ECF No. 5.)

On March 9, 2026, Defendant filed the pending Motion to Dismiss the FAC. (ECF No. 6.) On April 4, 2026, Plaintiff filed an Opposition to Defendant's Motion to Dismiss the FAC. (ECF No. 7.) On April 13, 2026, Defendant filed a Reply in Support of the Motion to Dismiss the FAC. (ECF No. 8.)

On September 16, 2026, the Court issued an Order requiring Defendant to show cause why this action should not be remanded for lack of subject matter jurisdiction. (ECF No. 9.) On October 16, 2026, the Defendant filed a Response to the Order to Show Cause. (ECF No. 10.)

## II. ALLEGATIONS IN THE FAC

In January 2009, Plaintiff began her employment with Defendant. (ECF No. 4 at ¶7.) "Over approximately seventeen and one-half years, Plaintiff advanced into a mid-level Program Manager role supporting [General Atomics'] MQ-9 Emergent Requirements Program." *Id.* at ¶8. Defendant's official job description for Plaintiff's position "emphasizes proposal development, coordination across departments, financial analysis, strategic planning, and collaboration with geographically dispersed teams." *Id.* at ¶11. Defendant classifies the role as "Hybrid," lists travel expectations of "0-25%," and does not "require daily on-site physical presence." *Id.* at ¶¶10-11. Defendant employs other Program Managers and personnel that work remotely. *Id.* at ¶35.

During her employment with Defendant, Plaintiff worked remotely "for extended periods, including January and February 2025." *Id.* at ¶31. Plaintiff received positive performance evaluations throughout her tenure, "including a 'High Meets Expectations'

rating during periods in which she worked predominantly remotely." *Id.* at ¶13. Plaintiff's "essential duties—proposal development, financial modeling, budget oversight, coordination with geographically dispersed teams, and enterprise reporting—[were] computer-based and coordination-driven," *id.* at ¶33, and "virtual meetings were standard practice" with her geographically distributed team and cross-functional collaborators, *id.* at ¶34. Prior to the following events, "Plaintiff had no record of discipline or performance deficiency." *Id.* at ¶13. At some unspecified point, Plaintiff became a resident of North Carolina. *Id.* at ¶5.

From February 13, 2025, to May 12, 2025, Plaintiff was on medical leave due to her "degenerative disc disease, including posterior disc bulging at C5/C6/C7." *Id.* at ¶¶22, 24-25. "This condition substantially limits major life activities including sitting for prolonged periods, driving long distances, lifting, sleeping, and working in sustained fixed positions." *Id.* at ¶23. At the time she requested leave, Plaintiff had worked for approximately seventeen years for Defendant, and worked in excess of 1,250 hours in the preceding twelve month period. *Id.* at ¶91. Defendant employed fifty or more full or part-time employees for each of the working days in the twenty weeks preceding and following Plaintiff's leave. *Id.* at ¶92.

Upon her return from leave, "Plaintiff continued to experience medical limitations affecting extended commuting and prolonged on-site presence," and on May 13, 2025, she "formally requested telework as a reasonable accommodation for her medical condition." *Id.* at ¶¶28-29. "Plaintiff remained willing and able to perform her job remotely and to travel as necessary within the state travel requirement of the role." *Id.* at ¶42. On June 23, 2025, Defendant formally denied Plaintiff's telework request and "required Plaintiff to report onsite in Poway, California, or face separation." *Id.* at ¶37. The denial was "categorical," "did not propose alternative accommodations," and "did not reflect an individualized assessment of whether Plaintiff could perform essential job functions." *Id.* at ¶¶39-40. This decision and subsequent ones were "made, authorized, or ratified by senior leadership . . . including Vice President Satish Krishnan and other high-level

decisionmakers." *Id.* at ¶62. On July 16, 2026, Defendant reiterated in a written directive that Plaintiff "confirm her return to onsite work or face separation." *Id.* at ¶43.

Around the same time period, Plaintiff had also been raising internal concerns about certain government contracting practices by Defendant. "In or about December 2024, Plaintiff was directed to open Business & Proposal ('B&P') charge numbers in connection with work relating to India MRO and related government contract activity." *Id.* at ¶14. Sometime before July 21, 2025, Plaintiff raised concerns about the legality of this practice to management, including senior leadership such as Vice President Krishnan. *Id.* at ¶¶14-16, 18. "After raising these concerns, Plaintiff began experiencing exclusion from meetings, diminished access to information, and reduced participation in key discussions related to her program responsibilities." *Id.* at ¶17. Plaintiff then filed a formal complaint through Defendant's ethics hotline on or about July 21, 2025, reporting her concerns about the charging practice and the subsequent retaliation. *Id.* at ¶19.

On July 24, 2025, Defendant acknowledged Plaintiff's ethics complaint and began an investigation. *Id.* at ¶45. On the same day, Defendant notified Plaintiff that unless she confirmed her return to onsite work by July 30, 2025, she would be placed on unpaid administrative leave beginning July 31, 2025. *Id.* at ¶46. On July 31, 2025, Plaintiff was placed on unpaid administrative leave and subsequently lost access to work and benefits-related systems, *id.* at ¶¶50-53, with a return to paid status "conditioned . . . on her agreement to report onsite," *id.* at ¶54.

The FAC asserts seven causes of action against Defendant: (1) disability discrimination in violation of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940 *et seq.*; (2) failure to accommodate in violation of FEHA; (3) failure to engage in a timely, good faith, interactive process in violation of FEHA; (4) interference in violation of the California Family Rights Act ("CFRA"), Cal. Gov't Code § 12945.2 *et seq.*; (5) retaliation in violation of CFRA; (6) whistleblower retaliation in violation of California Labor Code Section 1102.5; and (7) failure to prevent discrimination and harassment in violation of FEHA. *See id.*

## III. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to state a claim for relief, a pleading "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quotation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting Fed. R. Civ. P. 8(a)). A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation omitted).

## IV. DISCUSSION

In response to the Court's Order to Show Cause regarding subject matter jurisdiction (ECF No. 9), Defendant contends that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. (ECF No. 10 at 5.) Defendant further contends in its Motion to Dismiss that the FAC should be dismissed in its entirety because it (1) fails to allege a sufficient

connection to California to support application of California state law; and (2) fails to allege sufficient facts to state any of its claims under FEHA, CFRA, and California Labor Code Section 1102.5. (*See generally* ECF No. 6-1.)

Plaintiff does not contest subject matter jurisdiction at this stage. (*See* ECF No. 10-7 at 2.) Plaintiff contends that the FAC adequately alleges a connection to California and sufficient facts to state all of its claims. (*See generally* ECF No. 7.)

**A. Subject Matter Jurisdiction**

Because the question of subject matter jurisdiction precedes an examination of merits issues raised in a 12(b)(6) motion, *see P. Surgical Inst. of Pain Mgt., Inc. v. Kennedy*, 779 F. Supp. 3d 1148, 1155 (S.D. Cal. 2025), the Court first addresses Defendant's Response to the Order to Show Cause regarding the existence of subject matter jurisdiction in this case.

Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Subject matter jurisdiction may arise from either "federal question jurisdiction" or "diversity jurisdiction." 28 U.S.C. §§ 1331-32. To invoke federal question jurisdiction, the action must "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. For an action to "arise under" federal law, "[a] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 10 (1983) (quoting *Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936)). To invoke diversity jurisdiction, the complaint must allege that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . [or] citizens of a State and citizens or subjects of a foreign state[.]" 28 U.S.C. § 1332(a). Citizenship for the purposes of diversity jurisdiction is determined at the time the initial complaint is filed. *See Grupo Dataflux v. Atlas Glob. Group, L.P.*, 541 U.S. 567, 574-75 (2004).

"Under 28 U.S.C. § 1441, a defendant may remove an action filed in state court to federal court if the federal court would have original subject matter jurisdiction over the action." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1243 (9th Cir. 2009). In removed cases, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. 1447(c). Additionally, "[w]hen a plaintiff, after removal, cuts out all her federal-law claims, federal-question jurisdiction dissolves . . . and the federal court must remand the case." *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 39 (2025). The burden of establishing the Court's jurisdiction "rests on the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). "However, at the pleading stage, allegations of jurisdictional fact need not be proven unless challenged." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 614 (9th Cir. 2016). A defendant need only make "plausible allegations of the jurisdictional elements." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019).

As the Court noted in its September 16 Order to Show Cause, "Defendant's Notice of Removal stated that the basis of jurisdiction was federal question jurisdiction because Plaintiff's Complaint contained two causes of action alleging violations of the federal Family and Medical Leave Act." (ECF No. 9 at 1 (citing ECF No. 1 at ¶¶12-14).) However, Plaintiff's FAC no longer contains any FMLA causes of action. *See id.* at 2-3. Because Plaintiff's amended complaint excised the federal claims, federal question jurisdiction is no longer an appropriate basis for subject matter jurisdiction in this case. *See Royal Canin*, 604 U.S. at 39.

Defendant's Response to Order to Show Cause newly alleges that the Court has diversity jurisdiction over this case. (ECF No. 10 at 3.) First, Defendant alleges that complete diversity exists because "Plaintiff was a citizen of North Carolina when she filed the Initial Complaint, and Defendant was a citizen of California." *Id.* To establish Defendant's California citizenship, Defendant's attachment of a declaration by its Vice President of Internal Audit and Government Compliance is sufficient. (*See* ECF No. 10-1

at ¶4) (stating that Defendant was incorporated in California and has had its principal place of business in California); *Ha Nguyen v. BMW of N.A., LLC*, No. 320CV02432JLSBLM, 2021 WL 2411417, at *2 (S.D. Cal. June 14, 2021). As to Plaintiff's citizenship, Defendant alleges that, though the Initial Complaint represented that Plaintiff "at all relevant times . . . was an individual residing in the . . . State of California," "in fact, as evidenced by Plaintiff's relocation notices and remote work requests, she has resided in North Carolina since at least May 27, 2025." (ECF No. 10 at 2 (citing ECF No. 10-1 at ¶2).) Defendant additionally notes that Plaintiff's FAC now states that she "is an individual residing in North Carolina" and that "Plaintiff's counsel did not dispute [in email correspondence] that Plaintiff misrepresented her residence in the Initial Complaint or that she was a North Carolina resident when it was filed." *Id.* at 3 (citing ECF No. 10-5 at ¶3). Taking into account these uncontested allegations, the Court finds that Defendant has adequately alleged Plaintiff's North Carolina citizenship. *See NewGen, LLC*, 840 F.3d at 614 ("It is a longstanding principle that '[t]he place where a person lives is taken to be his domicile until facts adduced establish the contrary.'") (quoting *Anderson v. Watts*, 138 U.S. 694, 706 (1891)). Accordingly, the Court finds that Defendant has adequately alleged complete diversity for the purposes of diversity jurisdiction.

Second, Defendant contends that "Plaintiff's allegations establish an amount in controversy that easily exceeds the jurisdictional threshold [of $75,000]." (ECF No. 10 at 4.) Defendant notes that the FAC seeks lost wages for the "over six month[]" period that Plaintiff was placed on unpaid administrative leave and attaches a declaration stating that Plaintiff's annual salary was $189,758.40 at that time. *Id.* "Six months of lost wages alone therefore totals at least $94,879.20 ($189,758.40 / 2 = $94,879.20)." *Id.* The Court finds that Defendant has adequately alleged an amount in controversy exceeding $75,000. *See Lopez v. Wal-Mart Associates, Inc.*, No. 2:25-CV-07050-MCS-MAA, 2025 WL 2731005, at *2 (C.D. Cal. Sept. 24, 2025) ("The Court need only look to the value of lost wages [under a FEHA claim] to determine that the amount in controversy is satisfied.")

Because the Court finds that the Defendant has adequately alleged complete diversity and an amount in controversy exceeding $75,000, the Court concludes that it has diversity jurisdiction over this case. The Court turns to examining Defendant's Motion to Dismiss the FAC on the merits.

**B. Extraterritorial Application**

Defendant contends that the FAC should be dismissed in its entirety because it fails to "alleg[e] facts that, if true, would make her claims fall within the territorial reach of California law." (ECF No. 8 at 6.)

"California courts presume that the California legislature 'did not intend to give its statutes any extraterritorial effect.'" *Russo v. APL Marine Services, Ltd.*, 694 F. App'x 585, 586 (9th Cir. 2017) (quoting *N. Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1, 4 (1916)). Thus, "the majority of courts in California and other jurisdictions have found that the extraterritorial application of FEHA is determined by the situs of both employment and the material elements of the cause of action." *Russo v. APL Marine Servs., Ltd.*, 135 F. Supp. 3d 1089, 1094 (C.D. Cal. 2015) (collecting cases). "The analysis for the extraterritorial application of California law for the purposes of the CFRA is identical to the analysis for the FEHA." *Hill v. Workday, Inc.*, 773 F. Supp. 3d 779, 793 (N.D. Cal. 2025) (citing *Sexton v. Spirit Airlines, Inc.*, No. 21-cv-00898-TLN (AC), 2023 WL 1823487, at *3 (E.D. Cal. Feb. 8. 2023)). For the purposes of applying California Labor Code § 1102.5, the FEHA/CFRA extraterritoriality analysis is "at least illustrative" and "persuasive," as "[c]ourts have identified several factors which are relevant to determine whether the California Labor Code is appropriately applied extraterritorially for an out-of-state plaintiff: (1) the employer's citizenship, (2) the employee's state of residence, and (3) whether/how much the employee worked in California." *Id.* at 797 (collecting cases).

"The situs of employment consists of the employee's principal place of work, definite base of operations, or the location where the employee's work holds a substantial connection to." *Kane v. Matson Nav. Co.*, No. 23-15534, 2024 WL 1988838, at *1 (9th Cir. May 6, 2024) (internal quotation marks omitted) (quoting *Sexton*, 2023 WL 1823487,

at *3). "To determine whether the material elements of the cause of action establish[] a substantial connection to California, [courts look] to the location of where the core of the alleged wrongful conduct occurred." *Id.* (quoting *Sexton*, 2023 WL 1823487, at *3). "In evaluating . . . wrongful termination cases, [some] California courts have emphasized the location of where the termination decision was made as a crucial element of the claim because this decision gives rise to the liability of the conduct." *Sexton*, 2023 WL 1823487, at *4 (collecting cases).[1] Given the presumption against extraterritoriality of California statutes, multiple courts have dismissed FEHA, CFRA, and other California employment law claims where a non-resident plaintiff neither alleged that they primarily worked in California nor that the tortious conduct occurred in California. *See, e.g., Russo*, 135 F. Supp. 3d at 1094 (dismissing FEHA claim because the plaintiff primarily worked, and was allegedly harmed by conduct, in international waters); *Kane* 2023 WL 2899544, at *3 (same); *Sarviss v. Gen. Dynamics Info. Tech., Inc.*, 663 F. Supp. 2d 883, 900–01 (C.D. Cal. 2009) (dismissing state wage and hours claim because the plaintiff "indisputably spent the vast majority of his employment working *outside* of California").

In *Gonsalves v. Infosys Techs., LTD.*, No. C 09-04112 MHP, 2010 WL 1854146 (N.D. Cal. May 6, 2010), the court found that facts "indicat[ing] that plaintiff [Gonsalves] performed some work in California," including California business trips and managing clients located in California, failed to "support a conclusion that Gonsalves was 'employed' in California." *Id.* at *5. The court also found that the plaintiff "failed to allege facts from which the court could conclude that [the defendant] Infosys discriminated against him in California." *Id.* at *6. The court noted that:

> [T]he thrust of plaintiff's complaint is that Infosys personnel in California, including Infosys executives, attorneys and human resources employees,

---

[1] While *Sexton* found that an extraterritorial termination decision cut against application of FEHA, other courts have held that a termination decision made in California, standing alone, is not enough to *support* extraterritorial application of FEHA. *See Guillory v. Princess Cruise Lines, Ltd.*, 2007 WL 102851, at *4 (Cal. App. 2 Dist. Jan. 17, 2007); *Russo v. APL Marine Services, Ltd.*, 135 F. Supp. 3d 1089, 1094 (C.D. Cal. 2015), *aff'd,* 694 Fed. Appx. 585 (9th Cir. 2017) (unpublished).

> instituted, approved, ratified, affirmed and/or implemented the discriminatory policies that were expressed by Infosys' chairman and that ultimately led to plaintiff's injuries. These allegations are extremely general in nature. . . . In a similar case, Judge Fogel of this court held that "[i]f California-based employees participated in or ratified the alleged tortious conduct, the complaint must so state with specificity so that the Court can determine if these actions are sufficient to state a claim under FEHA." *Dodd-Owens v. Kyphon, Inc.,* No. C 06-3988, 2007 WL 420191, at *3 (N.D. Cal. Feb. 5, 2007) (Fogel, J.) . . . . Since Gonsalves' complaint only alleges participation by California-based Infosys employees at the most general level, his complaint is insufficient in this respect.

*Id.*; *see also Hill*, 773 F. Supp. 3d at 796 ("[T]he FAC relies on rote, non-specific allegations of 'approvals' or 'ratifications' in California . . . . Such general pleading has been held to be insufficient to overcome an extraterritoriality issue.") The *Gonsalves* court additionally noted that the complaint lacked information "critical to adjudicating [the plaintiff's] FEHA claims," namely "(1) who was responsible for demoting and firing Gonsalves, (2) where those individuals were located when they engaged in such conduct [and] (3) where Gonsalves was located when he was allegedly discriminated against." *Gonsalves*, 2010 WL 1854146 at *6; *see also Paparella v. Plume Design, Inc.*, No. 22-CV-01295-WHO, 2022 WL 2915706, at *4 (N.D. Cal. July 25, 2022) ("Noticeably absent from the Complaint are any facts concerning the location where [the one managing employee named in plaintiff's complaint] is based, where else any other hostile or discriminatory conduct occurred, where Paparella was ultimately terminated, and who was responsible for the decision to terminate him.")

Here, the FAC states that "Plaintiff Candace Thomas is an individual residing in North Carolina and, at all relevant times, was employed by Defendant in Poway, California." (ECF No. 4 at ¶2.) Beyond these facts, the FAC does not allege any information concerning the situs of employment. As to the situs of material elements of the cause of action, the FAC states that "the events giving rise to these claims occurred in Poway, California." *Id.* at ¶3. The FAC does not elaborate on this allegation other than

stating, without specifying the location, that "[t]he adverse decisions described herein were made, authorized, or ratified by senior leadership with substantial discretionary authority over employment decisions, including Vice President Satish Krishnan and other high-level decisionmakers[;] [t]hese individuals possessed authority to determine accommodation outcomes, impose unpaid leave, and direct separation decisions." *Id.* at ¶62. Finally, the FAC alleges that (1) there were periods in which Plaintiff "worked predominantly remotely," *id.* at ¶12; (2) Plaintiff's "role lists travel of 0-25% and does not require daily on site physical presence," *id.* at ¶11; and (3) "Plaintiff's team and cross-functional collaborators were geographically distributed, and virtual meetings were standard practice," *id.* at ¶34.

Defendant contends that "the FAC fails to allege that either Plaintiff's work or the events forming the basis of her claims occurred in California." (ECF No. 6-1 at 12.) Plaintiff contends that "[t]he FAC expressly alleges that Plaintiff was employed by Defendant in Poway, California, and that the events giving rise to her claims occurred in this District. At the pleading stage, these allegations are sufficient. . . . [Requiring] additional details, such as where specific decisionmakers were located or where each communication occurred, imposes a heightened pleading standard that does not exist under Rule 8." (ECF No. 7 at 7.)

Plaintiff does not cite, and the Court is not aware of, any authority supporting her contention that requiring "additional details" in a complaint to rebut the presumption against extraterritoriality "imposes a heightened pleading standard that does not exist under Rule 8." *Id.* This Court agrees with the reasoning of the courts in California and other jurisdictions that have required additional, non-conclusory facts alleging a connection to California to state a claim under FEHA, CFRA, and Labor Code Section 1102.5. *See, e.g.*, *Russo*, 135 F. Supp. 3d at 1094. As in *Gonsalves*, the Court finds that, though the FAC's description of Plaintiff's "hybrid" role may indicate Plaintiff performed some work in California, the FAC fails to include facts sufficient to allege that Plaintiff's situs of employment was in California, especially given that Plaintiff worked "predominantly

remotely" for unspecified periods and became a North Carolina resident at an unspecified time. The FAC's bare allegation that Plaintiff, "at all relevant times, was employed by Defendant in Poway, California," (ECF No. 4 at ¶2), is "merely conclusory" and the Court need not accept it as true. *Sprewell*, 266 F.3d at 988.

As to the situs of material elements of the claims, the FAC fails to allege information such as (1) who was responsible for denying Plaintiff's accommodation request or placing her on administrative leave, (2) where those individuals were located when they engaged in such conduct [and] (3) where Plaintiff was located when she was allegedly discriminated against. *See Gonsalves*, 2010 WL 1854146 at *6. The FAC's statement that "the events giving rise to these claims occurred in Poway, California" (ECF No. 4 at ¶3) is "merely conclusory." *Sprewell*, 266 F.3d at 988. The FAC's general allegation that senior leadership "approved, ratified, affirmed and/or implemented" the conduct does not suffice to support a situs of material elements in California, *Gonsalves*, 2010 WL 1854146 at *4, especially given the FAC's allegation that Plaintiff's team and collaborators are "geographically distributed." (ECF No. 4 at ¶34.) Nor does naming Vice President Krishnan suffice without alleging where he was located or specific facts regarding his responsibility for the alleged adverse decisions. *Paparella*, 2022 WL 2915706, at *4. Because Plaintiff fails to allege facts sufficient to support a situs of employment or situs of material elements in California, the Court finds that the FAC's California law claims fail as a matter of law. Accordingly, Defendant's Motion to Dismiss the FAC is granted.[2]

## V. LEAVE TO AMEND

Plaintiff requests leave to amend the FAC to cure any deficiencies. (ECF No. 7 at 12.) Defendant contends that Plaintiff should not be granted leave to amend the FAC because "the FAC and Opposition demonstrate that amendment would be futile." (ECF No. 8 at 14.)

---

[2] Because the Court dismisses all of the FAC's claims on the basis of extraterritoriality, it reserves ruling on the other grounds for dismissal raised by Defendant at this time.

After a party has amended a pleading once as a matter of course, it may amend further only "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). Federal Rule of Civil Procedure 15 further mandates that "[t]he court should freely give leave when justice so requires." *Id.* "This policy is to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (per curiam) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)). "Dismissal without leave to amend is improper unless it is clear . . . the complaint could not be saved by any amendment." *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 541 (9th Cir. 2022) (quoting *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991)).

The Court does not find that it is clear the FAC could not be saved by any amendment. Accordingly, the Court grants Plaintiff leave to amend the FAC to correct the deficiencies addressed in this Order.

## VI. CONCLUSION

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss the First Amended Complaint (ECF No. 6) is granted. All claims in the First Amended Complaint are dismissed without prejudice and with leave to amend.

IT IS FURTHER ORDERED that Plaintiff may file a Second Amended Complaint no later than thirty (30) days from the filing of this Order. If no second amended complaint is filed within thirty (30) days, the Court will order the Clerk of the Court to issue judgment consistent with the rulings in this Order and close the case.

Dated: 11/19/26

Hon. William Q. Hayes
United States District Court